# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-00639-COA

IN THE INTEREST OF A.B., A MINOR: ALISHA T.                                    APPELLANT

v.

MISSISSIPPI DEPARTMENT OF CHILD                                               APPELLEES
PROTECTION SERVICES AND FORREST
COUNTY YOUTH COURT

| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/2023 |
| TRIAL JUDGE: | HON. CAROL JONES RUSSELL |
| COURT FROM WHICH APPEALED: | FORREST COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANT: | ALISHA T. (PRO SE) |
| ATTORNEYS FOR APPELLEES: | JACK LUCIAN DENTON |
| | VICTORIA ANN LOWERY |
| | CHELYE P. AMIS |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 06/25/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE, AND EMFINGER, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This case is a child custody case resulting from a finding of child neglect. The Forrest

County Youth Court awarded durable legal custody of a minor child A.B.[1] to her foster

parents. A.B.'s biological mother, Alisha T., appealed and requests this Court to modify the

custody order based on new circumstances. Finding that Alisha raises no issue or legal

argument on appeal, we affirm the youth court's order. However, we reiterate that the youth

court did not terminate Alisha's parental rights, and Alisha is able to request custody

---

[1] We use initials in the place of the minor child's name.

modification with the Forrest County Youth Court.

## FACTS AND PROCEDURAL HISTORY

¶2.     The appellant, Alisha T., is the biological mother of A.B.  A.B. was a three-year-old girl who was living in Hattiesburg with her grandmother Penny H. in July 2022.  On July 27, 2022, Penny dropped off A.B. with the Mississippi Child Protection Services (CPS) and stated that she could no longer care for A.B.  CPS contacted both of A.B.'s parents—Alisha and Eligah B.—but neither were able to pick up A.B.  With no legal guardian able to pick up A.B., she was considered abandoned.  On July 28, 2022, the Forrest County Youth Court conducted a shelter hearing and ordered that physical and legal custody of A.B. remain with CPS.  A.B. was placed in a foster home under the care of Eunice C. and Ricky C.[2]

¶3.     An adjudication hearing was held on December 27, 2022, and January 3, 2023.  The court found that A.B. was a neglected child.  Afterward, the court conducted a disposition hearing.  The court found that the permanent plan for A.B. was reunification with her parents, while the concurrent plan was durable legal custody with A.B.'s foster parents, Eunice and Ricky.  The court also ordered that legal custody of A.B. remain with CPS and that physical custody would remain with the foster parents.

¶4.     A permanency hearing was held on April 18, 2023.  The judge explained to Alisha that the purpose of the hearing was to achieve permanency in A.B.'s case and that they would hear testimony regarding A.B.'s well-being, the progress of Alisha's and Eligah's individual service agreements, CPS's reasonable efforts to achieve permanency, and CPS's

---

[2] A.B. was initially placed in a different foster family's home but was moved to Eunice's and Ricky's home after A.B. was seen with an unreported bruise.

2

recommendation of the case moving forward. CPS admitted as evidence its report on A.B.'s case, as well as drug screening results from Alisha on December 27, 2022. The report highlighted Alisha's progress with her service agreement and A.B.'s well-being on two separate dates: January 1, 2023, and April 18, 2023.

¶5. The January 1 report noted that Alisha had successfully maintained contact with CPS, completed a mental health assessment, and participated in a parenting class. However, the report noted that Alisha had not obtained appropriate housing due to living with four other people in a three-bedroom house. In addition, the report noted that Alisha was not able to consistently make visits to see A.B. and that Alisha had tested positive for THC and Tramadol on August 11, 2022. The January 1 report stated that A.B. had been placed in the care of Eunice and Ricky and was adjusting well. The report also detailed CPS's reasonable efforts to achieve the permanency plans. The report's recommendation was that the court approve the proposed permanent plan of reunification and proposed concurrent plan of durable legal custody, that legal custody remain with CPS, and that a review hearing be held in ninety days.

¶6. The April 18 report/review hearing noted that A.B. had done "extremely well" with Eunice and Ricky. The report stated that all of A.B.'s needs were being met. The report highlighted that Alisha was employed and that she had maintained consistent visits with A.B. through Zoom and in person. On the other hand, the report noted that Alisha still had not found appropriate housing, that her mental health assessment was not thorough enough for recommendations, and that she had tested positive for Diphenhydramine in a urine analysis

3

on March 23, 2023. The CPS's assessment stated that the permanency plan of reunification was not a viable option. A.B. had spent nine months in CPS's custody and was doing very well and had a strong bond with Eunice. Alisha was working two jobs and still had not found a stable living arrangement. The report's recommendation was that the court approve the concurrent plan that durable legal custody be granted to Eunice and Ricky and that the CPS case be closed. CPS investigator Avery Holder testified at the permanency hearing and corroborated the information in the report.[3]

¶7. Alisha also testified at the permanency hearing. She stated that she was living in a four-bedroom home and that A.B. would have her own room if she lived there. Alisha stated that she currently had two jobs (different from the ones on the report) and that she made about $500 a month between them. She testified that she had no vehicle and that she was unable to make most in-person visits with A.B. because she had to rent a car to make the trip. Alisha testified that she wanted to be a parent for A.B. and that she hoped the court would keep the CPS case open.

¶8. After all testimony was completed, the court considered the totality of the circumstances and granted durable legal custody to Eunice and Ricky and closed the case.[4] The court noted that the same issues that brought A.B. into CPS's custody had still not been resolved nine months later. However, the court explicitly did not terminate Alisha's or

---

[3] The report also noted that A.B.'s father, Eligah, was also not a viable option for the permanency plan of reunification.

[4] The court also ordered that CPS "is hereby relieved of any further responsibility in this cause."

Eligah's parental rights and told the parents, "[I]f there is ever a time where you are more stable and able to care for your child, you both now understand that you do have the right to come and ask this Court to modify the custody arrangement."

¶9. Alisha filed her notice of appeal pro se on May 22, 2023. On January 9, 2024, she filed her pro se "Brief Of Appellant," which included a letter explaining to our appellate courts that her situation had improved since the last youth court hearing. Alisha went back to school and obtained her high school diploma as well as a trade certificate in child development. She stated she held a full-time job with benefits and was making $12 an hour, and she had been living at her residence for one year and five months. She also included supporting documentation for her job and trade certificate.

## DISCUSSION

¶10. It seems from Alisha's letter that she is not challenging the results of the Forrest County Youth Court permanency hearing but, rather, asking this Court for a "second chance" based on improved circumstances. As CPS notes in its appellate brief, Alisha did not raise any issue with the court's findings or make any legal arguments. The appellant must "set forth reasons for [her] arguments and cite authorities in their support," or else this Court is under no duty to consider her assignments of error. *Gilbert v. State*, 379 So. 3d 890, 898 (¶13) (Miss. Ct. App. 2023). CPS acknowledges that Alisha is requesting modification of the durable legal custody but directs this Court to Mississippi Code Annotated section 43-21-609 (Supp. 2023), which states in part that "the youth court shall retain original and exclusive jurisdiction of all matters related to durable legal custody, including, but not limited to,

5

petitions to modify the durable legal custody." CPS argues that Alisha's request for modification of durable legal custody should be filed in the youth court. We agree.

¶11. The court's order and the record make it very clear that Alisha still maintains her parental rights and that she may petition the youth court for a modification of the durable custody order if her situation improved. However, because the Forrest County Youth Court maintains original jurisdiction of this action under section 43-21-609, Alisha must file her custody modification request with that court. We are presented with no reason to reverse the youth court's order and therefore affirm.

## CONCLUSION

¶12. Because Alisha raises no issues or legal arguments to reverse the youth court's order, we affirm. However, we reiterate that Alisha still maintains her parental rights to A.B. and may still file a request to modify A.B.'s durable legal custody with the Forrest County Youth Court.

¶13. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**